# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

KENT DOUGLAS DOBBINS, *et al.,*      )
                                      )
              Plaintiffs,         )
v.                                )          NO. CIV-14-0257-HE
                                        )
LARRY DOBBINS, Individually and    )
as Trustee for the K.D. Dobbins Trust   )
dated January 29, 1992, *et al.,*      )
                                      )
              Defendants.     )

## ORDER

The plaintiffs are beneficiaries of the K.D. Dobbins Trust ("Trust"). They filed this suit in Oklahoma state court, seeking to hold the trustee, Larry Dobbins ("Dobbins" or "Trustee" hereafter), liable for breach of his fiduciary duties as trustee of the Trust. The petition alleged self-dealing and other misconduct by Mr. Dobbins. Plaintiffs also sought relief against various family members of Mr. Dobbins and others who had interests in property conveyed by him from the trust. Among those other defendants was The Bank of the Union ("Bank"), which had engaged in multiple financial transactions over the years with Mr. Dobbins, both in his capacity as trustee of the Trust and in his capacity as a private individual or owner/manager of his separate entities.

On January 24, 2014, the Bank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver of the Bank. The FDIC then removed the case to this court.

Based on settlements and/or agreed dismissals, plaintiffs' claims against all defendants

other than the FDIC have been resolved. Those settlements include an agreed resolution of the claims against Mr. Dobbins which resulted in the entry of an agreed judgment against him in the amount of $850,000. The judgment recites that Mr. Dobbins "obtained money and property by false pretenses as a result of defalcation while acting in a fiduciary capacity." [Doc. #86].

The agreed judgment does not resolve the claims against the FDIC, as receiver for the Bank. Plaintiffs claim that certain conveyances to, or other transactions with, the Bank should be "voided" or otherwise undone based on the Bank's actual or imputed knowledge of Mr. Dobbins' wrongdoing. While the petition is not specific as to exactly what relief is sought, it appears plaintiffs challenge transactions/conveyances arising out of these circumstances:[1]

Blaine County property. Land (surface only) in Blaine County, Oklahoma, was mortgaged to the Bank in 2005 to secure a line of credit granted by the Bank to the Trust and to Mr. Dobbins' entities, to finance a joint cattle feeding operation. Plaintiffs allege that, by June 2012, Mr. Dobbins' personal interests were in financial trouble and that the Bank was also in financial trouble, in part because of substantial loans to Mr. Dobbins. The result was a restructuring of Mr. Dobbins' debt to the Bank, with the Bank acquiring additional collateral. Mr. Dobbins deeded the Blaine County property to himself and then, as part of the

---

[1]*There appears to be no disagreement between the parties as to the specifics of the various transactions described here, although plaintiffs' submissions are confusing in how they link particular exhibits to particular transactions.*

"restructure," gave the Bank a mortgage on the property. It is not altogether clear whether the 2005 mortgage was paid off in the meantime, but it appears clear that, as of the Bank's insolvency on January 24, 2014, the Bank was the holder of one or more mortgages on the Blaine County property.

Custer County property. Land (surface only) in Custer County, Oklahoma, was sold by the Trust to Mr. Dobbins personally in 2007,[2] with the Trust carrying back two mortgages to secure the purchase price. The mortgages were first priority liens on the property. As part of the 2012 "restructure," Mr. Dobbins gave the Bank a mortgage on the property and also executed, on behalf of the Trust, an agreement which subordinated the mortgages Mr. Dobbins gave the Trust in 2007 to the mortgage he gave the Bank in 2012. The result was that the Trust lost its first lien position relative to the Bank. As of the date of the Bank's insolvency, it was the holder of a mortgage on the Custer County property. Assuming the validity of the subordination agreement, the Bank's lien had priority over that of the Trust.[3]

Mineral interests. The Trust owned mineral interests in Dewey, Texas, and Custer Counties of Oklahoma. It appears Mr. Dobbins and his wife (in their individual capacities) gave the Bank mortgages on the Dewey and Texas County minerals as part of the June 2012

---

[2]*The transaction, involving a transfer from Mr. Dobbins as Trustee to himself individually, was with the consent of the trust beneficiaries and with court approval. Its validity is not challenged here.*

[3]*Among the allegations against Mr. Dobbins was the assertion that he wrongfully granted himself a discharge of the mortgages to the Trust, without the debt they secured actually having been paid. It appears that circumstance does not impact the resolution of the claims against the Bank.*

"restructure." Some time later, Mr. Dobbins executed quit claim deeds transferring the minerals from the Trust to himself. As of the date of the Bank's insolvency, it held mortgages on at least the Dewey County and Texas County minerals.

Based on these transactions, it appears plaintiffs are seeking, as to the FDIC, in substance,[4] the following: (1) cancellation of the 2012 mortgage on the Blaine County property, (2) cancellation of the subordination agreement given in 2012 as to the Custer County mortgages, and (3) cancellation of the mortgages on the mineral interests.

Both plaintiffs and the FDIC have moved for summary judgment.[5] The court conducted a hearing (oral argument) on the motions on June 22, 2015, at which both parties' positions were ably argued by counsel.

The court concludes the motion for partial summary judgment of the FDIC should be granted and plaintiffs' summary judgment motion denied.

## Discussion

The court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(a). The court views the evidence in the light most favorable to the non-moving party. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir.

---

[4]*Plaintiffs characterize their request as one for a determination that the indicated transactions were never valid in the first place.*

[5]*The FDIC's motion is for judgment on the pleadings or, alternatively, for partial summary judgment [Doc. #67]. The motion seeks judgment as to any claim for punitive damages and as to any claim for equitable relief.*

2014).

For present purposes, it is unnecessary to discuss in detail the somewhat complicated factual background of the dealings between the Trust, Mr. Dobbins and the Bank. It appears very clear that Mr. Dobbins breached his fiduciary duties as trustee in many substantial ways. That does not, however, necessarily translate into relief against the Bank or, more importantly for present purposes, the FDIC. Plaintiffs argue that the various circumstances show that the Bank knew or should have known that various of Mr. Dobbins' actions involved improper self dealing or were otherwise inconsistent with his fiduciary duties, and that the Bank should therefore not be viewed as a bona fide mortagee. If this case turned on that issue as to the Bank, the court would deny the FDIC's motion, as there is substantial evidence in the record which supports plaintiffs' argument. There is also evidence that would support a contrary determination, requiring the denial of plaintiffs' motion as well. However, the FDIC's status as receiver controls the disposition of the issues in this case, as now framed by the pleadings.

When the FDIC operates in its capacity as the receiver of a failed bank, it generally "steps into the shoes" of the failed bank. *See* O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994). It takes possession of both its assets and liabilities. F.D.I.C. v. N. Savannah Props., LLC, 686 F.3d 1254, 1259 (11th Cir. 2012); *see also* 12 U.S.C. § 1821(d)(2)(A)(i). It has a responsibility to marshal the assets of the bank and to distribute them to creditors and shareholders. Golden Pac. Bancorp. v. F.D.I.C., 375 F.3d 196, 201 (2nd Cir. 2004). The proposition that the FDIC as receiver generally stands in the shoes of the insolvent entity

means claims for or against the entity are ordinarily resolved in accordance with applicable state law "except where some provision in the extensive framework of FIRREA provides otherwise." O'Malveny, 512 U.S. at 87. Here, the FIRREA framework includes provisions which preclude the relief plaintiffs seeks in their petition.

The FDIC relies principally on the anti-injunction provisions of FIRREA, specifically 12 U.S.C. § 1821(j), which provides:

> (j) Limitation on court action. Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or as a receiver.

This provision prevents a court from granting equitable relief such as might otherwise be available under applicable law, to the extent that it interferes with the conduct of the receivership. The FDIC's receivership powers and duties include marshaling the assets of the failed bank, including identifying the proper nature and ownership of those assets, for ultimate distribution to creditors or others. Bank of America N.A. v. Colonial Bank, 604 F.3d 1239, 1243 (11th Cir. 2010). Here, it appears clear that the relief plaintiffs seek — whether in the form of an order cancelling a mortgage or other instrument, or imposing an equitable lien or constructive trust, or a declaration to the same effect, or otherwise "undoing" the challenged transfers and conveyances — is equitable relief of the sort to which § 1821(j) applies.[6]

Plaintiffs argue that § 1821(j) does not bar their claims because they are not

---

[6]*See plaintiffs' petition [Doc. #1-5] at 17 as to the relief sought.*

challenging the FDIC's administration of the various assets, but rather are challenging whether the various interests ever became assets of the Bank in the first place. They assert that the Bank's participation in, or knowledge of, various improper actions by the Trustee means the mortgages or other interests never became valid, bona fide assets of the Bank. The distinction has some surface appeal, but is ultimately unpersuasive.

First, the argument has been rejected outright by at least one appellate court. In <u>Bank of America N. A. v. Colonial Bank</u>, the Eleventh Circuit concluded, as noted above, that the FDIC's powers included "the process of identifying [the assets'] proper nature and ownership...." 604 F.3d. at 1243. It specifically declined to "carve out a 'non-owned assets' exception to § 1821(j) that stands in direct contradiction to the statute's plain meaning." *Id.* at 1244.

Further, this case does not present a situation where a particular claimed asset of the bank was void or never really existed at all, such as where the failed bank purports to hold a note on which the maker's signature is ultimately shown to have been forged. Some of the authorities plaintiffs rely on involve other situations where the asset no longer existed as of the date of the receivership. *See* <u>Stommel v. LNV Corp.</u>, 2014 WL 1340676 (D. Utah, 2014) (trust deed "worthless" at time of receivership); <u>Steamboat Ventures, Ltd. v. F.D.I.C.</u>, 2009 WL 4797832 (N.D. Ga. 2009) (mortgage discharged prior to receivership). Here, it is undisputed that Mr. Dobbins was the trustee of the Trust, that he was generally authorized by the Trust documents to act for it, and that the Bank held, as of the date of the Bank's insolvency, documents actually signed by Mr. Dobbins as Trustee purporting to be mortgages

7

in favor of the Bank. Further, it is undisputed that the amounts secured by the mortgages, or affected by the subordination agreement, were unpaid. While the Bank's alleged knowledge of Mr. Dobbin's improper actions might render the various documents voidable under state law, there is no basis suggested here for arguing they were void or that the Bank held no asset at all. Rather, the undisputed facts establish that the Bank held assets as of the date of its insolvency which gave it rights in the various tracts of property. Those rights were potentially subject to modification or defeasance based on plaintiffs' claims, or otherwise, but were nonetheless assets of the Bank at the time the FDIC succeeded to them upon its appointment as receiver.

Finally, other provisions of FIRREA indicate this court cannot entertain a suit directly pursuing the type of relief plaintiffs seek here. Although the FDIC relies principally on § 1821(j), 12 U.S.C. § 1821(d)(13)(D) also indicates a court lacks the power to determine, in the first instance, rights in assets held by an insolvent bank. The latter section provides, in pertinent part:

> (D) Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> > (i) ... any action seeking a determination of rights with respect to, the assets of the depository institution for which the Corporation has been appointed receiver....

Here, plaintiffs essentially ask this court to make a determination of rights in the Bank's assets. This court lacks the authority to do that, at least directly, in light of the above section.

Plaintiffs further argue that preventing them from asserting their claims in this suit

8

violates their constitutional rights, in that it would effect a taking in violation of their Due

Process rights.  The court concludes otherwise.  Contrary to plaintiffs' suggestion, their

options are not limited to either their equitable claims here or nothing.  They have access to

the administrative claims process employed by the FDIC.  *See* 12 U.S.C. § 1821(d).  Both

of the sections of law referenced above which limit the court's authority begin with important

qualifiers.  Sub-section 1821(j) begins with the language "Except as provided in this section

...."  Sub-section 1821(d)(13)(D)) begins with "Except as otherwise provided in this

subsection ...."  Those "excepting" references are to, among other things, the administrative

claims process.  *See* Homeland Stores, Inc. v. R.T.C., 17 F.3d 1269, 1273-74 (10th Cir.

1994); Colman v. Wendover Funding, Inc., 89 F.3d 849, 1996 WL 316460 at *3 (10th Cir.

1996) (unpublished opinion) ("The '[e]xcept as otherwise provided' language refers in part

to FIRREA's administrative claim procedure outlined in § 1821(d)(3)-(13).").  That process

potentially embraces claims of the sort plaintiffs allege here—challenging the fact or extent

of an insolvent bank's ownership of particular assets.  Bank of America N.A., 604 F.3d at

1246 (noting the broad range of claims potentially subject to the administrative claims

process).[7]  Moreover, the FDIC's determination of claims submitted through the

administrative process are then subject, in appropriate circumstances, to *de novo* judicial

review in the district court.  12 U.S.C. § 1821(d)(6); Bank of America N.A., 604 F.3d at

---

[7]*Homeland v. R.T.C., 17 F.3d 1269 (10th Cir. 1994) is not to the contrary.  That case concluded claims against the receiver based on its management actions after taking over a depository institution were not subject to the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) or to a requirement for exhaustion of the claims administration process.  Here, the claims are based on the pre-receivership conduct of the Bank.*

1247; Placida Prof. Ctr., LLC v. F.D.I.C., 512 Fed. App'x. 938, 946 (11th Cir. 2013). The availability of this process avoids the constitutional infirmity which might otherwise result if claims like those of plaintiffs here were barred altogether by § 1821(j) or other provisions of FIRREA. *See* Freeman v. F.D.I.C., 56 F.3d 1394, 1403 (D.C.Cir. 1995); Bueford v. R.T.C., 991 F.2d 481, 486 (8th Cir. 1993).

Based on the foregoing, the court concludes the referenced sections of FIRREA prevent the court from granting the relief plaintiffs seek and that the FDIC's motion for partial summary judgment, directed to the equitable relief sought in the petition, must be granted.[8]

## Potential Remaining Issues

Entry of summary judgment for the FDIC on the indicated basis ends this case insofar as the claims raised by plaintiffs' pleadings in this case are concerned. However, plaintiffs indicated at the June 22 hearing that they viewed this case as, in part, a vehicle for judicial review of the denial of their administrative claims previously submitted to the FDIC. The FDIC did not clearly disagree with the suggestion. The filings in this case do suggest administrative claims were submitted by plaintiffs to the FDIC while this case was pending, as indicated by counsel at the hearing, but do not otherwise indicate the nature or disposition

---

[8]*The FDIC motion also seeks judgment as to any claim for punitive damages being asserted by plaintiffs. It is unclear whether plaintiffs are even seeking punitive damages. The petition prays for punitive damages against "Defendants" [Doc. #1-5 at 16] but the motion to remand suggests they are not sought against the FDIC. [Doc. #27 at 9: "Plaintiffs are not seeking punitive damages against Defendant FDIC."] In any event, it is clear plaintiffs are not entitled to punitive damages in these circumstances. 12 U.S.C. § 1825(b)(3).*

of any claims filed. In these circumstances, there is no basis for the court to now address whether this case is an appropriate vehicle for judicial review of any administrative claims that may have been submitted to the FDIC, whether such review would be otherwise proper, or what the result of that review could or should be.

### Conclusion

In light of the foregoing, the court orders as follows: plaintiffs' motion for summary judgment [Doc. #68] is **DENIED**. Defendant FDIC's motion for partial summary judgment [Doc. #67] is **GRANTED**; plaintiffs' claims as set out in its petition are **DISMISSED WITHOUT PREJUDICE**. The trial setting on the court's July, 2015, trial docket is **STRICKEN**. The parties are directed to confer as to what further proceedings in this case, if any, are appropriate as to the administrative claims process referenced above. Within **fourteen (14) days**, the parties are directed to file either a joint pleading, if they are in agreement, or their individual pleadings if not, as to their view of any further proceedings in this case.

**IT IS SO ORDERED**.

Dated this 29th day of June, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE